# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL  "O"  JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|---|---|---|---|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

Present: The Honorable  CHRISTINA A. SNYDER

| K. Dickerson | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:　　　Attorneys Present for Defendants:

N/A　　　　　　　　　　　　　N/A

**Proceedings:**　　IN CHAMBERS: ORDER FOLLOWING BENCH TRIAL

## I.　INTRODUCTION

This case concerns the termination of plaintiff Alicia Perez's benefits under the long term disability ("LTD") and waiver without premium insurance ("WOP") plans (collectively "Plans") that defendant Lincoln National Life Insurance Company ("LNL") administers pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA").

Perez applied for LTD benefits on October 2, 2015. See Administrative Record ("AR") 1633-34. LNL tentatively approved Perez's claim on March 11, 2016, pending review of Perez's medical records. AR1360. After that review, LNL denied Perez's claims by letters dated November 25, 2016 (LTD plan) and November 28, 2016 (WOP plan). AR0978, AR2459. Perez appealed the withdrawal of benefits on May 1, 2017. AR0845. LNL denied Perez's first appeal on August 27, 2017. AR0681. Perez filed a second appeal on February 19, 2018, AR0404, which LNL again denied on July 17, 2018, AR02102.

Perez filed this action pursuant to ERISA, 29 U.S.C. § 1132(e)(2), on August 23, 2018. Complaint, ECF No. 1 ("Compl."). The parties filed opening trial briefs on July 12, 2019. See Perez's Opening Trial Br., ECF No. 18 ("Perez Tr. Br."); LNL's Opening Trial Br., ECF No. 19 ("LNL Tr. Br."). The parties filed responsive trial briefs on August 2, 2019. See Perez's Opposition to LNL's Trial Br., ECF No. 26 ("Perez Opp."); LNL's Opposition to Perez's Trial Br., ECF No. 28 ("LNL Opp."). The parties subsequently submitted proposed memoranda of contentions of fact and law. See Perez's Mem. of Contended Facts and Law, ECF No. 30 ("Perez's MFL"); LNL's Mem. of Contended Facts and Law, ECF No. 29 ("LNL's MFL").

**CIVIL MINUTES – GENERAL**     **"O"**     **JS-6**

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|---|---|---|---|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

On September 17, 2019, the Court held a bench trial. The Court now finds and concludes as follows.

## II.     FINDINGS OF FACT

### A.     Perez's Employment, And The Operative LTD And WOP Policies

Perez was hired by GEP Administrative Services ("GEP") on September, 8, 1998. AR0001. Perez is a payroll analyst. In her role, she manages adjustments for each payroll department in each of GEP's offices. Her job involves answering calls and emails involving payroll calculations, reviewing and preparing adjustments to correct errors in payroll calculations, and editing and verifying financial adjustments. The job description issued by her employer states that she is required to work in front of a computer for prolonged periods of time, including prolonged periods of sitting. AR1597. However, Perez's supervisor reports that the tasks and functions generally required of the position could be accomplished sitting or standing. AR 1544-45.

On May 1, 2012, LNL issued a group long-term disability policy to GEP. AR0124. As part of her employment with GEP, Perez enrolled the plan. The plan provides a monthly benefit to the extent the claimant is "Totally Disabled," under the Regular Care of a Physician, and submits proof of continued "Total Disability." AR0145. The monthly benefit ceases on the date the claimant ceases to be "Totally Disabled." Id.

"Total Disability" means the claimant is unable to perform with reasonable continuity the "Substantial and Material Acts" necessary to pursue her "Own Occupation." AR0134. "Own Occupation" means the employment, business, or profession the claimant was regularly performing when the Disability began, not the specific job the claimant was performing for her employer. AR0131. "Substantial and Material Acts" of one's "Own Occupation" are the non-modifiable tasks generally required by employers. AR0133. In determining which acts are "Substantial and Material," the Plan requires LNL to consider whether a claimant can perform the specific job duties required by GEP, and, if not, determine whether any such tasks are customarily required of other employees engaged in plaintiff's occupation. Id.

In pertinent part, the LTD policy states as follows:

**TOTAL DISABILTY** or **TOTALLY DISABLED** will be defined as follows.

CIVIL MINUTES – GENERAL      "O"      JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|-------------------------|------|--------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

(1) During the Elimination Period and Own Occupation Period, it means that as a result of an Injury or Sickness the Insured Employee is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his or her Own Occupation and is not working, or if working, would not be Partially Disabled.

**SUBSTANTIAL AND MATERIAL ACTS** means the important tasks, functions and operations:

(1) during the Elimination Period and Own Occupation Period, generally required by employers from those engaged in the Insured Employee's Own Occupation

[. . .]

(3) that cannot be reasonably omitted or modified.

**OWN OCCUPATION or REGULAR OCCUPATION** means any employment, business, trade or profession and the Substantial and Material Acts of the occupation the Insured Employee was regularly performing for the Employer when the Disability began. Own Occupation is not necessarily limited to the specific job the Insured Employee performed for the Employer.

AR 0131-35.

The WOP policy, meanwhile, provides that life insurance will be continued without payment of premiums for an insured who becomes "Totally Disabled." The WOP policy defines "Totally Disabled" as follows:

**DEFINITION**. For this benefit, Total Disability or Totally Disabled means an Insured Person: (1) is unable, due to sickness or injury, to engage in any employment or occupation for which such Insured Person is or becomes qualified by reason of education, training, or experience; and (2) is not engaging in any gainful employment or occupation.

AR2059.

CIVIL MINUTES – GENERAL        "O"        JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|---|---|---|---|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

### B.    Perez's Claim Process and Medical Review

### 1.    Perez Files Her Claim

Perez submitted a claim for LTD disability benefits on October 2, 2015, which she resubmitted in December 2015 following a notice of administrative deficiency in her paperwork. AR1633-34. She had stopped working on April 15, 2015. In her handwritten application for benefits, Perez claimed she was unable to work due to "severe pain, unable to concentrate," and "dizziness." AR1633-34.

To support her claim, Perez submitted a physician statement from her general physician Dr. Paul Lee. Dr. Lee opined that Perez was unable to work because she required access to a bathroom at all times, experienced pain from sitting, and was in fact unable to sit, stand, or walk for no more than 1 hour each per day. AR 1635-37. Dr. Lee reported that Perez may be unable to concentrate effectively at work due to her discomfort, inability to sit or stand for more than one hour at a time, and her constant need to use the restroom, specifically to defecate. Perez's medical records dating to 2011 confirm a history of abdominal pain, rectal bleeding, swelling and inflammation of the colon, colon polyps, and colitis. See, e.g., AR1659-92, AR1739-72. But scans and tests from 2011 through 2014 did not reveal any condition that led any doctor to instruct Perez to cease working. Id. Dr. Lee's reports following physical examinations in April 2015, July 2015, and November 2015 provided the sole medical basis for Perez's initial claim. Dr. Lee did not address the possibility that Perez's condition prevented her from working until the November 2015 visit, at which time he concluded that she was unable to work. AR1510-13.

In March 2016, LNL tentatively approved Perez's claim in good faith, see AR1360, but requested medical records from her treating gastrointestinal specialist, Dr. John Kasher, and her treating hepatalogist, Dr. Edward Mena. AR1351-52, 1370-72, 1286-91.

Records received from Dr. Kasher in August 2016 confirmed that Perez had registered several gastrointestinal complaints between 2011 and 2016—stomach pain, constipation, diarrhea, bleeding—but Dr. Kasher's physical examinations, scans, and tests did not reveal any abnormalities that prevented Perez from working. AR 1272-78. After an exam taken in July 2015, Dr. Kasher ruled out irritable bowel disease, and attributed Perez's discomfort to irritable bowel syndrome. AR1278. In notes from a visit on March 15, 2016, Dr. Kasher reported that Perez complained of constipation and "pressure as if" she needed to stool, but an inability to actually do so. AR1264. Dr. Kasher also stated in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  "O"  JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. |

his notes that Perez reported "[n]o more diarrhea." Id. At that same March 15, 2016 visit, Dr. Kasher conducted a physical examination, after which he formally assessed Perez's condition as "Constipation - Stable" and "Crohn's disease NOS – Stable." AR1270.[1] Perez was instructed to continue treatment for constipation with Linzess, a prescribed medication. He did not conclude that Perez's condition prevented her from working. Nor did he report that Perez was not working because she was impaired by any disabling condition. In fact, Dr. Kasher's notes state that Perez "used to work for [a] payroll department" but was "laid off." AR1264. The records show that Perez visited Dr. Kasher again on June 7, 2016. Dr. Kasher performed a colonoscopy and a biopsy, and the results were shared at a follow up appointment on August 2, 2016. The tests showed "no celiac or [C]rohn's disease . . . but found there is still inflammation with erosions." AR1220. Perez was instructed to continue with Linzess, and to return for a follow up appointment in November 2016. Id.

The records received from Dr. Mena indicated that Perez was treated by Dr. Mena on February 20, 2015 and December 9, 2015. At the February 2015 visit, Dr. Mena assessed Perez with "biliary cirrhosis" and "fatty liver disease," but found that she "is doing great" and directed Perez to continue treatment with medications and return for an ultrasound. AR1336. The February 2015 notes do not address whether Perez's liver conditions inhibit her from performing her ordinary work functions. In October 2015, Dr. Mena wrote that the results of Perez's ultrasound were "unremarkable." AR1337. At the December 2015 visit, Dr. Mena conducted a physical examination and wrote that "[p]atient is in her usual state of health." AR1334. He directed Perez to continue with her current treatment, and to work on losing weight. Id. Perez treated with Dr. Mena again on September 16, 2016. At that visit, Dr. Mena conducted an exam and found that Perez was again "in her usual state of health." AR1062. He wrote that Perez "states that she does not feel that she is capable of working." AR1063. But Dr. Mena did not conclude that Perez's liver conditions prevent her from working. Nor did he report that Perez was not working because she was impaired by any disabling condition. In fact, Dr. Mena's notes from the

---

[1] The International Classification of Diseases ("ICD") code cited for "Crohn's disease NOS" is K50.9. AR1270. According to the World Health Organization, this condition corresponds to "unspecified regional enteritis." See World Health Organization, International Classification of Diseases (2003) at K50.9 (https://apps.who.int/classifications/apps/icd/icd10online2003/fr-icd.htm?gk50.htm+)

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|-------------------------|------|--------------------|
| Title    | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

December 2015 visit state that Perez was not working because she had "lost her job," not because she was disabled.  Id.

In addition to the record requests, LNL also sent "abilities" forms to both Dr. Kasher and Dr. Mena to complete.[2]  AR1156 (Dr. Kasher); AR1051 (Dr. Mena).  The forms request the doctors' assessments as to whether and to what extent, if any, Perez could perform the functions of her occupation.  Dr. Kasher did not complete the form and did not explain why.  Dr. Mena returned the form, and opined that Perez only had "[m]oderate limitation of functional capacity" and was "capable of clerical/administrative (sedentary) activity." AR1053.  Notwithstanding these conclusions, he also circled "Yes" beneath the prompt asking "Is [Perez] now totally disabled."  AR1054.  In response to a follow up prompt, Dr. Mena wrote that he anticipated Perez could return to work in April 2017, "unless not impaired."  Id.

## 2.     LNL Reviews And Terminates Perez's Claim

Based on the foregoing information, LNL undertook a review of Perez's claim for total disability.  LNL hired Dr. Oluremi Aliyu, board certified in occupational medicine, to conduct an independent peer review of Perez's claim.  Dr. Aliyu's review consisted of a paper review of Perez's medical records, as well as interviews with Perez's three treating physicians at that time: Dr. Lee, Dr. Kasher, and Dr. Mena.

Dr. Aliyu states that she spoke with Dr. Lee by phone on November 16, 2016. AR0986.  According to Dr. Aliyu, Dr. Lee reported that Perez "continued to subjectively complain of constant abdominal discomfort and frequent passing of gas."  Id.  She states that Dr. Lee's "physical examinations have been normal, and [Perez] always appeared well at her clinic visits." AR0986-97.  Dr. Lee also reportedly told Dr. Aliyu that he assessed Perez to be totally disabled "based on what [Perez] told him" about her inability to "sit for prolonged periods of time due to anal/rectal discomfort." AR0987.  "Otherwise," Dr. Aliyu reported, Dr. Lee found "no physical limitations or restrictions" from her condition.  Id.

---

[2] Dr. Lee evidently also received an abilities form, which he returned with the conclusion that Perez was totally disabled.  AR0986 (as reported by LNL's paper review). The parties have not directed the Court to this form in the 2,478 page administrative record that was filed in 54 parts, however, and the Court was unable to locate it.

CIVIL MINUTES – GENERAL          "O"          JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|--------------------------|------|---------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

The Court observes that Dr. Lee strongly contests this characterization of his phone call with Dr. Aliyu. In a clarification letter sent to LNL in February 2017 (after LNL terminated Perez's claim), Dr. Lee wrote that he "did not fill out the form [declaring Perez disabled] based *solely* on what Ms. Perez told me. I also based the report on my numerous visits with Ms. Perez, as substantiated by several objective tests, such as colonoscopies, CT scans, and others." AR0840 (emphasis original).

Dr. Aliyu states that she interviewed Dr. Kasher on November 16, 2016, two weeks after his last reported appointment with Perez. AR0986. In the conversation with Dr. Aliyu, Dr. Kasher reportedly stated that he treated Perez for "IBS with constipation, which have remained stable for some time." Id. According to Dr. Aliyu, Dr. Kasher "stated that [Perez] does not have any significant impairment from a gastrointestinal standpoint to recommend any specific restrictions or limitations," and that while Perez reported discomfort with prolonged sitting, there are "no clinical findings of any rectal or anal lesions that would account for such reported discomfort." Id. Dr. Kasher has not contested Dr. Aliyu's account of their conversation.

Dr. Aliyu states that she spoke with Dr. Mena on November 15, 2016. AR0986. According to Dr. Aliyu, Dr. Mena reported that Perez "has been diagnosed with primary biliary cholangitis and nonalcoholic steatohepatitis," but "does not have any significant impairment from the standpoint of her liver." Id. The "mild elevation of her liver function test," Dr. Mena reported to Dr. Aliyu, "is not a disabling condition." Id. Dr. Aliyu further states that Dr. Mena found that Perez's "main compliant [sic] of fatigue . . . is significantly out of proportion" with his assessment of her condition. Id. Dr. Mena told Dr. Aliyu that "no restrictions and/or limitations are medically warranted," and to the extent inconsistent portions of the abilities form he submitted (AR1053-54) suggested otherwise, "Dr. Mena stated that he completed the form based on the request of the claimant, and not based on his clinical opinion." Id. Dr. Mena has not contested Dr. Aliyu's account of their conversation.

After this peer review, Dr. Aliyu submitted a report concluding that Perez's evaluations, tests, and physical exams, as well as the observations of her treating physicians, did not support a finding of total disability because Perez retained the ability to perform the sedentary work her job required. AR0994-96. Accordingly, LNL terminated Perez's claim for LTD and WOP benefits on or around November 28, 2016. AR0978-84, AR2459-61.

**CIVIL MINUTES – GENERAL**   **"O"**   **JS-6**

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|-------------------------|------|--------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

### 3.   Perez's First Appeal

Perez appealed the termination in May 2017, attaching a narrative letter from Dr. Lee and updated medical reports related to her gastrointestinal and liver conditions. AR788-95, AR807-10, AR866-918.

Notably, Perez submitted a report from a new treating gastroenterologist, Dr. Paul Ephraim, whom Perez retained to replace Dr. Kasher. Dr. Ephraim conducted a physical examination on June 2, 2017. AR788-95. At the outset, Dr. Ephraim noted that Perez was "engaged in [a] conflict with [LNL] over claimed disability and inability to work." AR0788. He noted that "[h]er position, supported by letters from Dr. Paul Lee, is that her bowel disease, particularly her diarrhea with urgency, prevented her from being able to perform even sedentary work." Id. After conducting his own physical examination, Dr. Ephraim assessed Perez to have "[i]rritable bowel syndrome with both constipation and diarrhea." AR0795. Although Dr. Ephraim did not state, in this contemporaneous examination report, whether this gastrointestinal diagnosis caused any impairments that prevent Perez from working, he did opine that he "honestly do[es] not feel" that Perez's "liver disease will support [a] disability claim." AR0795.

In addition to the examination report, Perez subsequently submitted to LNL a clarification letter from Dr. Ephraim dated June 19, 2017. AR0761. Dr. Ephraim states in the letter that Perez "asked me to write in support of her disability claim." Id. He reports that Perez "must be close to her bathroom, and even then has soiled herself because of inability to get to the toilet in time." Id. He also notes that Perez's "bowel problems are further complicated by bouts of constipation for which she has required medications." Id. The letter concludes that Perez states she "is certain that the activity and stress of a work environment worsen her bowel symptoms," and adds that her disorder "appears," based on these self-reports, "to impair her ability to function at work." Id. On that basis, Dr. Ephraim suggests that LNL should "honor her disability claim." Id. Dr. Ephraim does not conclude that Perez is totally disabled, nor does he make medical findings that would support such a determination.

Perez also submitted an updated hepatology report from Dr. Mena. AR0807-810. The May 15, 2017 report states that "the patient is doing well," finds "no evidence of cirrhosis," instructs Perez to "continue to focus on diet and exercise," and doubles Perez's dosage for ursodiol (to treat her biliary cholangitis and fatty liver disease) to 500 milligrams twice a day. AR0810.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          "O"          JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

For purposes of the appeal, LNL retained a second gastroenterologist—Dr. Thomas Liebermann—to conduct a second independent peer review. Dr. Liebermann's paper review consisted of a review of Perez's medical records, and attempts to interview Perez's three treating physicians at that time: Dr. Lee, Dr. Ephraim, and Dr. Mena. See AR0731-750. In his report, Dr. Liebermann states that he was unable to contact Dr. Lee, and the covering doctor was unable to give an opinion regarding Perez's condition. AR0735. Dr. Liebermann did, however, interview Dr. Ephraim and Dr. Mena.

According to Dr. Liebermann, Dr. Mena reported to him on June 27, 2019 that Perez "was not disabled with respect to her liver disease." Id. That same day, Dr. Liebermann sent Dr. Mena a confirmation letter repeating this report, and inviting Dr. Mena to respond if he disagreed with that characterization of their discussion. AR0741. Dr. Mena did not submit any response. Dr. Liebermann interviewed Dr. Ephraim on June 29, 2017. In that interview, Dr. Ephraim reportedly told Dr. Liebermann that he "did not think the patient was impaired due to her gastrointestinal situation, which is a mixed form of irritable bowel that has responded to the use of Linzess and Xifaxan." AR0735. Dr. Libermann reported that it was Dr. Ephraim's conclusion that Perez was "[n]ot impaired from a GI perspective." Id. On the same day, Dr. Liebermann sent Dr. Ephraim a confirmation letter repeating this report and inviting Dr. Ephraim to respond if he disagreed. AR0737. The following day, Dr. Ephraim submitted a short response to Dr. Liebermann's letter, explaining that he "thought I communicated to you that I think [Perez] is disabled, but I did not know how much of her disability was due to [irritable bowel disease] and how much to [irritable bowel syndrome]." AR0714. Overall, Dr. Liebermann concluded that Perez was not disabled, and would be able to perform the ordinary functions of her job so long as her work station is placed "near a restroom." AR0735.

Nevertheless, in response to the apparent discrepancy in Dr. Liebermann's report, LNL decided to obtain a third independent peer review in July 2017, and represented that it would not rely on Dr. Liebermann's report for purposes of the appeal. AR0708. LNL then retained Dr. Venkat Mohan, a board certified gastroenterologist and clinical professor of medicine at the University of Washington, to conduct a paper review of Perez's medical records and interview Perez's treating physicians. At Perez's request, Dr. Mohan conducted his review via questionnaire rather than phone interview. AR0078. Because Dr. Ephraim apparently retired or stopped treating Perez at some point between June 30, 2017 and July 14, 2017, Dr. Mohan only sent questionnaires to Dr. Lee, and Dr. Mena. AR0720; see also AR0078 (letter from Perez's counsel representing that Dr. Ephraim had

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**      **"O"**      **JS-6**

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|-------------------------|------|--------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

retired and was no longer treating Perez). Because neither Dr. Lee nor Dr. Mena responded to Dr. Mohan's questionnaire, Dr. Mohan's undertook a paper review of Perez's file. AR0722. Dr. Mohan found no support for functional impairment or work incapacity due to either Perez's liver or gastrointestinal issues. AR0722.

In response to Dr. Mohan's report, Perez submitted another letter from Dr. Lee. AR0706. The letter restated Perez's accounts of her symptoms; specifically, that "[p]rolonged sitting causes severe left-sided abdominal pain, which leads to tenesmus and diarrhea," that Perez "is unable to concentrate at work," that Perez "is unable to walk more than one hour per 8 hour workday," and that Perez "has frequent urges to defecate/pass gas and is not responsive to typical inflammatory bowel disease medication." AR0706. LNL submitted the letter to Dr. Mohan, who confirmed that Dr. Lee's concerns, based on Perez's self-reports, were considered, and rejected, as part of his review. AR0695-704.

On August 23, 2017, LNL upheld the termination of LTD and WOP benefits on first-level appeal. AR0688-94.

### 4.   Perez's Second Appeal

Perez filed a second appeal in February 2018. The appeal attached letters from Perez's two sons describing their observations of their mother's condition, an update from Dr. Lee, along with records from a new treating gastroenterologist, Dr. Mehdi Korsandi. AR0485-557. Dr. Korsandi conducted a physical examination on December 20, 2017. Perez reported constipation and pain at the exam, but Dr. Korsandi did not find anything disabling. AR0485-87. In fact, Dr. Korsandi noted that "her last colonoscopy showed no colitis." AR0487. The results of an irritable bowel disease screening panel also ruled out that condition. AR0492-93.

LNL then retained Dr. Prakash Jay, certified in internal and occupational medicine, to conduct an independent medical examination. From the physical examination he conducted, Dr. Jay found some abdominal tenderness related to obesity, but no disability that would prevent Perez from performing her job functions. AR0388-91. After his exam and review of Perez's records, Dr. Jay found that some minor functional limitations, such as the inability to sit for prolonged periods, may warrant certain workplace accommodations—such as the ability to change position from sitting to standing, the ability to take frequent breaks to stand or walk "every hour for approximately five to ten minutes,"

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**     **"O"**     **JS-6**

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

and the ability to work near a restroom—but he did not conclude that Perez suffered from any conditions that prevented her from performing her job functions. AR0390-91.

Perez responded by submitting another letter from Dr. Lee, and commissioning a second independent medical exam conducted by board certified internal medicine specialist Dr. Babak Tashakkor. In his letter, Dr. Lee again relayed reports from Perez that she continued to experience rectal pain and sitting limitations that prevent her from working. AR0367. However, Dr. Tashakkor concluded from his physical examination that Perez was capable of performing sedentary work, stating that Perez "can sit for 6 hours in an eight hour day," and could "stand and walk for 2 hours in an eight hour day." AR0373. Although he found that Perez "has a terminal disease" for which the "median survival time is approximately four years"—the only physician in the record to find this— he did not find her totally disabled. Id. After receiving them from Perez, LNL sent these materials to Dr. Jay, who, on review, affirmed his prior opinion that Perez can perform her typical job functions, subject to the accommodations he identified. AR0230-34.

Based on the foregoing, LNL upheld the termination of benefits. AR0212-20.

## 5.     Perez Is Denied SSDI Benefits

Perez also pursued federal Social Security Disability Insurance ("SSDI") benefits while she was pursuing her claim on the LNL policies. AR0025. That claim was initially denied in September 2016, and subsequently denied on reconsideration in January 2017. Id. On February 13, 2019, Administrative Law Judge ("ALJ") Edward Bauer affirmed denial of Perez's SSDI claim, finding Perez's subjective reports of debilitating pain and an inability to work internally inconsistent, lacking credibility, and in conflict with medical records. See Decl. of Blake Russum ("Russum Decl."), ECF No. 19-2, Ex. 1 at 8-12.

## III.   LEGAL STANDARD

ERISA provides that a qualifying ERISA plan participant may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" See 29 U.S.C. § 1132(a)(1)(B); Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). As a participant in the Plan, Perez has standing to seek judicial review of LNL's termination of her benefits. See Chuck v. Hewlett Packard Co., 455 F.3d 1026, 1040 n.8 (9th Cir. 2006). A claimant bears the burden to prove entitlement to benefits at the

CIVIL MINUTES – GENERAL       "O"       JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|--------------------------|------|---------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

district court by a preponderance of the evidence. See Muniz v. Amec Constr. Mgmt., Inc., 623 F.3d 1290, 1294 (9th Cir. 2010). The burden does not shift to an insurer simply because it initially granted, and then terminated, the requested benefits. Id. at 1296.[3]

A claim of denial of benefits in an ERISA case is reviewed "under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). The parties here agree that a *de novo* standard of review applies. See Perez Trial Br. at 13; LNL Trial Br. at 14. Pursuant to that standard, the Court "considers the matter anew, as if no decision had been rendered." Dawson v. Marshall, 561 F.3d 930, 932-33 (9th Cir. 2009). Specifically, the Court must determine whether benefits were correctly denied based on the evidence in the Administrative Record, and by interpreting the governing plan documents without deferring to either party's interpretation. Firestone, 489 U.S. at 112-13, 115.

While the Court's *de novo* review is ordinarily limited to the administrative record, additional evidence may be considered if "circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 944 (9th Cir. 1995). Where there is "conflicting testimony," the Court is required to "evaluate the persuasiveness" of the evidence "and decide which is more likely true." Shaw v. Life Ins. Co. of N. Am., 144 F. Supp. 3d 1114, 1123 (C.D. Cal. 2015).

## IV.    CONCLUSIONS OF LAW

To determine whether Perez has met her burden of proof pursuant to the terms of the Plans, the Court first examines what the Plans require Perez to establish to become eligible for benefits. The Court then assesses whether Perez has come forward with enough evidence to establish that she meets those standards.

---

[3] Perez contends that LNL's decision to initially approve her disability claim before it had collected evidence from her principal treating physicians places the burden on LNL to justify its later decision to cancel the delivery of those benefits after the medical evidence was collected and reviewed. See Perez Tr. Br. at 21-22. As discussed in Muniz, this is an incorrect statement of the law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          "O"          JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. |

## A.     The Plans' Eligibility Requirements

"ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans." Richardson v. Pension Plan of Bethlehem Steel Corp., 112 F.3d 982, 985 (9th Cir. 1997).  Instead, "Congress intended that courts apply contract principles derived from state law but be guided by the policies expressed in ERISA and other federal labor laws."  Id.; see also Dupree v. Holman Prof' Counseling Centers, 572 F.3d 1094, 1097 (9th Cir. 2009).  Following these rules, courts "interpret terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990) (internal citation omitted).

Perez's LTD plan "is an 'own occupation' policy, also known as an occupational policy." Gross v. UnumProvident Life Ins. Co., 319 F. Supp. 2d 1129, 1132 (C.D. Cal. 2004) (applying California law).  To be eligible for benefits pursuant to the LTD plan, Perez must show that she is unable "to perform with reasonable continuity the Substantial and Material Acts necessary to pursue [her] Own Occupation."  AR0134.  "Own Occupation" means the employment, business, or profession the claimant was regularly performing when the Disability began, not the specific job the claimant was performing for her employer.  AR0131.  "Substantial and Material Acts" of one's "Own Occupation" are the non-modifiable tasks generally required by employers in that occupation.  AR0133.  In determining which acts are "Substantial and Material," the LTD plan requires the Court to consider whether Perez can perform the specific job duties required by GEP, and, if not, determine whether any such tasks are customarily required of other employees engaged in Perez's occupation.  Id.

Perez's WOP plan, by contrast, is a "general disability polic[y]," or an "any occupation policy," which "indemnif[ies] the insured only when [she] becomes incapable of following any occupation for profit."  Gross, 319 F. Supp. 2d at 1132 (explaining that "total disability for purposes of an any occupation policy [is] a disability which prevents [the insured's] working with reasonable continuity in his customary occupation *or in any other occupation* in which he might reasonably be expected to engage in view of his station and physical and mental capacity") (quoting Erreca v. West. States Life Ins. Co., 19 Cal. 2d 388, 394–395 (1942)) (emphasis added).  By its terms, to be eligible for benefits pursuant to the WOP plan, Perez must show that she "is unable, due to sickness or injury, to engage in any employment or occupation for which such [she] is or becomes qualified by reason of education, training, or experience."  AR2059.

CIVIL MINUTES – GENERAL      "O"      JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|---|---|---|---|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

For purposes of the "own occupation" determination relevant to the LTD plan, Perez is a senior payroll analyst. AR1544. The position does not require travel and can be completed either sitting or standing. AR1545. The substantial and material duties required by the position include answering phone calls and typing emails involving payroll calculations, reviewing and preparing documents, handling interpersonal communication, and exercising independent judgment. AR1544-45, AR1597. Accordingly, to establish that she is totally disabled pursuant to the LTD plan, Perez must present evidence that she is incapable of performing these substantial and material duties.

With respect to the "any occupation" determination that applies to the claim on the WOP plan, Perez has at least a high school education, and more than a decade of experience working as a payroll clerk trained to operate complicated software. AR0512. To be eligible for WOP benefits, therefore, Perez must prove that she is unable "to engage in any employment or occupation" for which she is eligible from these qualifications.

Pursuant to these functional standards, "[t]he mere existence of an impairment is insufficient proof of disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). Perez must also "bear[] the burden of proving that [her] impairment *is disabling*." Id. (emphasis added); see also Holifield v. UNUM Life Ins. Co. of America, 640 F. Supp. 2d. 1224, 1237 (C.D. Cal. 2009) ("It is an individual's ability to function, not simply their diagnosis, that entitles him or her to disability benefits.").

## B. The Weight Of The Evidence

The administrative record contains medical evidence from Perez's treating physicians (Drs. Lee, Kasher, Ephraim, Korsandi, and Mena), two independent medical examinations (Drs. Jay and Tashakkor), and three paper reviews (Drs. Aliyu, Liebermann, and Mohan). Perez also submits self-reported narratives, as well as affidavits from her children. In addition, before the Court are the findings of the ALJ in Perez's SSDI benefits determination. Assessing this evidence, the Court concludes that Perez has not carried her burden to establish total disability under either of the Plans.

## 1. Medical Evidence

To assess the weight it should accord to physician-reported medical evidence, the Court considers "(1) the extent of the patient's treatment history, (2) the doctor's

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          "O"          JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

specialization or lack thereof, and (3) how much detail the doctor provides supporting his or her conclusions." Shaw, 144 F. Supp. 3d at 1129 (citing cases).

Applying these considerations, the Court first looks to Perez's treating specialists: gastroenterologists Drs. Kasher, Ephraim, and Korsandi, and hepatologist Dr. Mena. Among the gastroenterologists, the Court places the most weight on Dr. Kasher. Dr. Kasher was Perez's treating gastroenterologist between 2011 and 2016—by far the longest of any of the gastroenterologists who treated Perez—and the gastroenterologist treating Perez at the time of her initial claim in 2015. Shaw, 144 F. Supp. 3d at 1129-30 ("Courts have typically afforded greater weight to the opinions of physicians who have treated the claimant for an allegedly disabling condition for a long period of time.") (citing inter alia Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011)). Dr. Kasher diagnosed Perez with irritable bowel syndrome, ruled out the more serious Crohn's disease and irritable bowel disease, and declined to submit a disability assessment supporting Perez's claim for disability. See AR1156, AR1220, AR1278. Dr. Kasher also told Dr. Aliyu, without any subsequent reservation or revision, that Perez "does not have any significant impairment from a gastrointestinal standpoint to recommend any specific restrictions or limitations," and that while Perez reported discomfort with prolonged sitting, there are "no clinical findings of any rectal or anal lesions that would account for such reported discomfort." AR0986.[4] Taken together, the Court concludes that it is reasonable to infer that Dr. Kasher—the specialist who treated Perez's principal ailments for the most

---

[4] At the bench trial, Perez's counsel urged the Court to ignore evidence from Dr. Kasher in view of his "silence" and Dr. Aliyu's claimed untrustworthiness. See also Perez Opp. at 21. The Court declines to draw that inference. Dr. Kasher received repeated opportunities to support Perez's claim for total disability in the time near and during the pendency of her claim: at examinations in 2015 and 2016, in the abilities assessment form distributed to him by LNL, in his interview with Dr. Aliyu and, later—as Dr. Lee did—in response to Dr. Aliyu's characterization of their interview. At none of those junctures, however, did Dr. Kasher submit any evidence to support Perez's claim. And in fact, in his undisputed interview with Dr. Aliyu, Dr. Kasher apparently took the opposite view. In light of these facts, the Court concludes that it is more reasonable to infer that Dr. Kasher does not assess that Perez is totally disabled.

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|---|---|---|---|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

amount of time—does not assess that Perez is totally disabled by her gastrointestinal condition.

The Court next considers gastroenterological evidence from Drs. Eprhaim and Korsandi. Perez's only recorded physical exam with Dr. Ephraim took place on June 2, 2017. AR0771.[5] Dr. Ephraim abruptly retired thereafter, at some point between June 30, 2017 and July 14, 2017. AR0078. From what the Court can deduce, Dr. Ephraim treated Perez at most between August 2, 2016 (when Perez had her last recorded examination with Dr. Kasher) and June 30, 2017 (when Dr. Ephraim last wrote a letter to LNL in support of Perez's first appeal). But it is more likely that Dr. Ephraim only treated Perez once, at the recorded visit on June 2, 2017, and then remained involved in her claims process during the four weeks before his retirement on or around June 30, 2017. Either way, Dr. Ephraim's limited role in Perez's actual gastrointestinal treatment severely restricts the weight the Court grants his opinions. See Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832 (2003) (asserting that the ordinary "assumption that the opinions of a treating physician warrant greater credit . . . may make scant sense when, for example, the relationship between the claimant and the treating physician has been of short duration").

With these reservations in place, the Court does not find that the evidence from Dr. Ephraim tips the weight of evidence toward a finding of total disability. After his one-time examination, Dr. Ephraim assessed Perez to have "[i]rritable bowel syndrome with both constipation and diarrhea." AR0795. He did not conclude, in his examination report, that this condition prevented Perez from working. Id. Even in the subsequent letter of clarification, Dr. Ephraim's revised conclusion that LNL should "honor" Perez's disability claim derives from what "appear[ed]" to him from what Perez reported, based on what was "certain" to Perez. AR0761. Dr. Ephraim's conclusion was not based on what was certain to him, let alone any medical evidence that he uncovered from his single examination of Perez. The assertion in Dr. Ephraim's two-line handwritten note to Dr. Liebermann— that "I think [Perez] is disabled"—is similarly unsupported by evidence that Perez could not work. AR0714 (also stating that Dr. Ephraim could not determine the medical basis

---

[5] While the Court treats Dr. Ephraim as a "treating physician," the Court notes that his single physical examination situates him more closely to the two independent medical examiners in this case, Dr. Jay and Dr. Tashakkor, who also only examined Perez on a single occasion.

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|-------------------------|------|--------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

for the disability he found, but believed it to arise from some combination of inflammatory bowel disease and irritable bowl disorder). These are not grounds to find that Perez is "totally disabled" by her gastrointestinal conditions pursuant to either of the Plans. See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 877 (9th Cir. 2004) (holding that testimony from treating physicians that claimant was disabled did not establish disability where the treating physicians failed to provide "at least *some* answer explaining why the illness prevented [claimant] from performing her work as a secretary"); e.g., Brown v. Connecticut Gen. Life Ins. Co., No. 13-CV-5497 PJH, 2014 WL 7204936, at *13 (N.D. Cal. Dec. 17, 2014) (concluding that plaintiff "failed to establish that she satisfied the Life Policy's definition of Totally Disabled," and declining to defer to a treating physician's "conclusory assertion that plaintiff is Totally Disabled" after only "brief screening tests"); see also Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (holding that the factfinder, in the related context of an application for SSDI benefits, "need not accept an opinion of a physician—even a treating physician—if it is conclusionary and brief and is unsupported by clinical findings").

The evidence from Perez's other treating gastroenterologist—Dr. Korsandi—does not establish total disability, either. Dr. Korsandi conducted a single physical examination of Perez on December 20, 2017. His examination report did not conclude that Perez was totally disabled. AR0485-87. If anything, Dr. Korsandi's assessment suggests an improvement in Perez's underlying condition. He found that Perez's "last colonoscopy showed no colitis," AR0487," and determined from the results of an inflammatory bowel disease screening panel that Perez did not have that disease, AR0492-93. There is, therefore, no evidence from Dr. Korsandi suggesting that Perez is totally disabled by her gastrointestinal conditions.

The Court next considers evidence involving Perez's liver condition. Dr. Mena, Perez's long-time treating hepatalogist, treated Perez throughout the claim period in 2015-16. In examination reports from this time, Dr. Mena wrote that the results of testing were "unremarkable," that Perez was consistently "in her usual state of health," and that Perez should focus on diet and exercise. AR1334-37, AR1062-63. He did not conclude, in any of these reports, that Perez was incapable of working or totally disabled, even after Perez told Dr. Mena that she did not believe she could return to work. AR1063. In fact, on the abilities form that LNL provided to him, Dr. Mena assessed that Perez only had "[m]oderate limitation of functional capacity" and was "capable of clerical/administrative (sedentary) activity." AR1053.

CIVIL MINUTES – GENERAL          "O"          JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|-------------------------|------|--------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

While on the same form Dr. Mena circled "Yes" beneath the prompt asking "Is [Perez] now totally disabled," AR1054, the Court finds that this conclusion is not supported by Dr. Mena's own assessment of Perez's capabilities, and therefore not entitled to weight. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (affirming factfinder's decision, in SSDI context, to accord only "minimal evidentiary weight" to "treating physicians' views" that were "in the form of a checklist, did not have supportive objective evidence, was contradicted by other statements and assessments of [claimaint's] medical condition, and was based on [claimant's] subjective descriptions" of his disability); e.g., Holifield v. UNUM Life Ins. Co. of Am., 640 F. Supp. 2d 1224, 1242 (C.D. Cal. 2009) (insurance plan administrator was permitted to reject treating physician's opinion in these circumstances); see also Seleine v. Fluor Corp. Long–Term Disability Plan, 598 F. Supp. 2d 1090, 1101 (C.D. Cal. 2009), aff'd, 409 F. App'x 99 (9th Cir. 2010) ("Under ERISA, an administrator is not free to accept a conclusion in a medical report without considering whether that conclusion follows logically from the underlying medical evidence."). To that end, Dr. Mena does not contest later telling Dr. Aliyu that "no restrictions and/or limitations are medically warranted" on account of Perez's liver condition, and to the extent inconsistent portions of the abilities form he submitted suggest otherwise, Dr. Mena told Dr. Aliyu that "he completed the form based on the request of the claimant, and not based on his clinical opinion." AR0986. On the balance of this evidence, the Court concludes that the medical evidence from Perez's treating hepatologist also does not support a finding of total disability.

That leaves Dr. Lee, Perez's longtime general physician. Dr. Lee is not a specialist in either gastroenterology or hepatology. He has, however, consistently concluded that Perez suffers from advanced gastrointestinal diseases like inflammatory bowel disease and Crohn's disease, and repeatedly found that Perez cannot work as a result of her symptoms. While the Court must give weight to Dr. Lee because he has continuously treated Perez for more than seven years, Shaw, 144 F. Supp. 3d at 1129, that weight must be limited by the fact that Dr. Lee is not a specialist in either of Perez's major condition areas. Zavora v. Paul Revere Life Ins. Co., 145 F.3d 1118, 1122-23 (9th Cir. 1998) (holding that an ERISA plan administrator abused its discretion with "reliance on non-experts in field" to make a benefits determination); Shaw, 144 F. Supp. 3d at 1129 (court must consider a "doctor's specialization or lack thereof").

Additionally, while Dr. Lee claims that his opinions are "substantiated by several objective tests," his conclusions—that Perez "is unable to work effectively due to nausea

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          "O"          JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. |

and frequent need to defecate," AR0367, that Perez is "unable to return to sedentary work because she cannot undergo prolonged periods of sitting and needs constant access to the bathroom," AR0841, and that Perez "is unable to concentrate at work due to nausea, [and] weakness," AR0706—principally arise from Perez's *ipse dixit*. See Jordan, 370 F.3d at 875-78 (ERISA factfinder not obligated to defer to conclusory statements submitted by physicians that merely repeat claimant's subjective reports). In fact, Dr. Lee concedes that "[o]n some level" his conclusions all ultimately reflect Perez's "subjective complaints." AR0840. His opinions are therefore not medical findings, and that diminishes the weight the Court is obligated to give them. See Seleine, 598 F. Supp. 2d at 1102 (concluding that where the "records of [claimant's] attending physicians primarily document her subjective complaints," the claimant's "attempts to elevate these notes of a patient's self-report to the status of 'findings' is inappropriate" because "these complaints were subject to verification by objective medical evidence," and a factfinder is "under no obligation to accept them at face value"); Holifield, 640 F. Supp. 2d at 1240 (ERISA disability claimant's position was "not supported by the law" where "the record . . . does not show 'findings' by medical professionals as much as mere recordings of Holifield's own complaints").

In consideration of these factors, the Court cannot conclude that Dr. Lee's opinions by themselves, or in combination with the other medical evidence before the Court from Perez's other treating physicians, supports a finding that Perez is totally disabled pursuant to the Plans. Like Perez's treating specialists, Dr. Lee has examined Perez and reviewed the same records, but he has reached different diagnostic conclusions, and different assessments of Perez's abilities. The sole basis for these differences appears to be the weight that Dr. Lee has accorded Perez's self-reported inability to perform work-related functions, specifically her ability to sit, stand, or walk. The unspecialized opinions of a claimant's primary care provider, when they contradict the conclusions of treating specialists and chiefly derive from a claimant's self-reported limitations, are neither medical findings, nor sufficient to rebut the medical findings of the specialists actually treating that claimant's allegedly disabling condition. Shaw, 144 F. Supp. 3d at 1129-30; Seleine, 598 F. Supp. 2d at 1102. On this basis as well, the Court declines to conclude that Perez has carried her burden to demonstrate that she is totally disabled pursuant to the Plans.

Neither of the independent medical examiner reports, nor any of the paper reviews, support a disability finding, either. Dr. Jay's independent examination concluded that Perez was not disabled, and could perform her job functions with limited accommodation,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL     "O"     JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|---|---|---|---|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

such as the ability to change position from sitting to standing, the ability to take frequent breaks to stand or walk "every hour for approximately five to ten minutes," and the ability to work near a restroom. AR0390-91.[6] Dr. Tashakkor, who was retained by Perez, also concluded that Perez was capable of performing sedentary work, stating that Perez "can sit for 6 hours in an eight hour day," and could "stand and walk for 2 hours in an eight hour day." AR0373. And of course, each of LNL's paper reviewers—for what their conclusions are worth, and it is considerably less than the weight accorded to the physicians who actually examined Perez—declined to find Perez totally disabled, either. See AR0986 (Dr. Aliyu), AR0735 (Dr. Libermann), AR0695 (Dr. Mohan).

---

[6] At trial, the Court inquired as to whether any of these accommodations, or any other accommodation, had been attempted while Perez was employed. See Trial Tr. at 1:19-2:2, 9:11-13. The parties could not identify any instance of an attempt to accommodate in the record. See id. at 10:11-12. Notwithstanding the absence of any supporting evidence, Perez's counsel still asserted that any attempt to accommodate Perez would be futile. Id. at 10:12-14 ("[I]t is my understanding that they cannot [accommodate] given the extensive absences for the restroom breaks[.]"); id. at 12:3-5 ("I'm aware of nothing to be able to accommodate that, Your Honor[.]"); id. at 18:2 ("[H]er job can't really accommodate her due to rushed time schedules."). LNL's counsel, in response, contended that no accommodation was even necessary, since Perez's job description already permitted her to work from an alternating sit/stand position. Id. at 19:10-13 ("And so there's no concern for an accommodation because it's quite clear from the record . . . that [Perez] could perform her occupation to the extent she wanted to sit or stand[.]").

The Court also inquired as to whether Perez's claim should be denied without prejudice, or its disposition continued, until an accommodation could be attempted. Id. at 32:16-18. While Perez's counsel stated that his client "would be quite okay" with a continuance, id. at 33:23-24, LNL's counsel disagreed, and contended that denying Perez's claim without prejudice would not be procedurally appropriate. Id. at 32:19-23. The Court ultimately concludes that, in this case, a disposition to allow time to try an accommodation would be futile because Perez no longer works for GEP. The record reflects that Perez has not been employed for more than four years, such that there is no employment opportunity which could be utilized to attempt an accommodation.

**CIVIL MINUTES – GENERAL**      **"O"**      **JS-6**

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|--------------------------|------|---------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

In accordance with the foregoing, the Court finds that the weight of the medical evidence does not support a conclusion that Perez is totally disabled pursuant to the Plans.

**2.      Perez's Other Evidence**

In addition to medical evidence, Perez submits a personal statement, AR0516, as well as affidavits from her sons attesting to her alleged disability, AR0423-26. While the Court is obligated to at least consider this subjective evidence, see Demer v. IBM Corp. LTD Plan, 835 F.3d 893, 904–07 (9th Cir. 2016) (abuse of discretion not to consider a claimant's subjective account of disability), evidence of this kind is not entitled to significant weight, see Jordan, 370 F.3d at 875-78 (ERISA factfinder not obligated to take subjective account of disability at face value); Shaw, 144 F. Supp. 3d at 1135-36, 1139 (finding "significant potential for bias" in narratives submitted by a claimant, her friends, and her family, and cautioning that "subjective evidence of a disabling condition is inherently less reliable than objective evidence").

The Court is especially reticent to consider Perez's narrative due to evidence that she may not be a credible witness. See Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) (holding that courts may apply "ordinary techniques of credibility evaluation" to "determin[e] whether or not [a] claim of disabling pain should be believed"). Earlier this year, an ALJ denied Perez's claim for SSDI benefits in part because he questioned the veracity of her testimony involving the disabling effects of her gastrointestinal and hepatological ailments. See Russum Decl., Ex. 1 at 8-12 (concluding that Perez's "statements and actions concerning the intensity, persistence, and limiting effects of her impairments are not fully consistent with the claim of disability"). Among other concerns, the ALJ found that Perez's testimony about her ability to work "contains inconsistencies" that led the ALJ to doubt her testimony and determine that "her symptoms are less likely to reduce her capacity to perform work related activities" than Perez claims. Id. at 8. For example, Perez claims she suffers from severe and disabling diarrhea, but the ALJ found that Perez "denied experiencing diarrhea" as recently as January 2018. Id. Similarly, while Perez alleged in her SSDI petition that she stopped working because of her symptoms, the ALJ found that Perez "inconsistently advised" her treating physicians "that she had actually been laid off from work." Id.; see, e.g., AR1264 (Perez told Dr. Kasher that she had been "laid off"); AR1063 (Perez told Dr. Mena that she had "lost her job").

While the ALJ's disposition in the SSDI proceeding is not controlling or even necessarily persuasive authority that governs this Court's total disability finding, its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL          "O"          JS-6

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|--------------------------|------|---------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

determinations with respect to Perez's credibility are noticeable. See Nagy v. Grp. Long Term Disability Plan for Employees of Oracle Am., Inc., 183 F. Supp. 3d 1015, 1025 (N.D. Cal. 2016), aff'd, 739 F. App'x 366 (9th Cir. 2018). In Nagy, the court was "faced with an unavoidable credibility dispute between the ERISA beneficiary and his treating physicians on one hand, and the insurer's medical experts on the other, without having heard testimony from the individuals whose credibility is being questioned." Id. at 1025. In that situation, "where the Court's holding inevitably relies on a credibility determination, and an [ALJ] has heard testimony from the claimant, evaluated the medical record, and made a well-reasoned disability determination," the court concluded that "the ALJ's decision is probative of [the claimant's] disability at the time he applied for LTD benefits," such that "while the SSA Decision is not binding, the Court will consider [the claimaint's] SSA Decision in evaluating whether [the claimant] was disabled under the terms of the Policy" at issue. Id. On appeal, the Ninth Circuit affirmed this approach, holding that "the district court did not abuse its discretion by considering the social security decision even though it was not part of the administrative record" because "social security decisions can be particularly important evidence in ERISA cases" and "the additional evidence at issue . . . could not have been presented in the administrative process." Nagy, 739 F. App'x at 367 (internal citations and marks omitted).

Considering Perez's testimony in this light, as weighed in the context of the foregoing medical evidence discussed supra, the Court finds that the testimony does not support a finding of total disability pursuant to the Plans. See Fair, 885 F.2d at 603 (holding that "even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain," a factfinder "cannot be required to believe every allegation of disabling pain, or else disability benefits would be available for the asking"). Perez "bears the burden of proving that [her] impairment is disabling." Matthews, 10 F.3d at 680. Her inconsistent, unverifiable testimony that conflicts with the conclusions of several of her treating physicians—including Dr. Kasher, the specialist who treated her principal gastrointestinal condition for the greatest amount of time, and at the time of her initial claim—cannot carry this burden.[7] See, e.g., Langlois v. Metro. Life Ins.

----

[7] Nor, for that matter, is the burden carried by the testimony of Perez's children, which describes how Perez is affected by her condition. See Shaw, 144 F. Supp. 3d at 1135-36 ("While the court does not doubt that [claimant] struggles with symptoms of her condition, ultimately it cannot rely on these narratives"—which were "written by

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|---|---|---|---|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

Co., No. 11-CV-03472 RMW, 2012 WL 1910020, at *14 (N.D. Cal. May 24, 2012) ("[W]here, as here, self-reported symptoms are contradicted[,] . . . the court finds the more objective evidence to be more convincing.").

In reaching this conclusion, the Court does not inappropriately "apply a heightened objective standard of disability not found in" either of the Plans. Cf. Perez Opp. at 6-7, 17. Considering, but rejecting, subjective evidence in the process of determining whether Perez has come forward with a preponderance of the evidence establishing that she is "totally disabled" is not the same as applying a heightened standard of proof. The cases that Perez discusses are not to the contrary. For instance, in May v. AT&T Umbrella Beneficiary Plan No. 1, No. 11-CV-02204 JCS, 2012 WL 1997810 (N.D. Cal. June 4, 2012), aff'd, 584 F. App'x 674 (9th Cir. 2014) (cited at Perez Opp. at 6), the court merely concluded that "it may be arbitrary and capricious" for a factfinder "to reject [subjective] complaints" by a claimant "*without a principled reason*." Id. at *17 (emphasis added). As stated above, however, the Court has specific reasons to doubt the veracity of Perez's subjective assessment of her abilities, which also conflict with the findings of several treating physicians. See Demer, 835 F.3d at 906 (stating that a claimant's subjective "testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but acknowledging that such testimony could be discounted where there are "grounds for questioning [the claimaint's] credibility"). Another case, Bergman v. Federal Express Corp. Long Term Disability Plan, No. 16-CV-1179-BAS (KSC), 2017 WL 4310751 (S.D. Cal. Sept. 27, 2017) (cited at Perez Opp. at 6), similarly concluded that it was an abuse of discretion to "refus[e] to credit" claimant's self-reports of disability, but only to do so categorically. Id. at *11.

The other cases string-cited without discussion in Perez's briefs stand for the same, unremarkable proposition. See, e.g., Demer, 835 F.3d at 904-06 (discussed above and cited at Perez Opp. at 6); Montour v. Hartford Life & Acc. Ins. Co., 588 F.3d 623, 635 (9th Cir. 2009) (cited at Perez Opp. at 6) (holding that while it "would probably have been unreasonable for [the administrator] to require [the claimant] to produce objective proof of his pain level," the administrator was permitted to discount the claimant's self-reported disabilities when there was other evidence "to support their conclusion that [the claimant's]

---

[claimant], her family and friends"—"to find that [claimant] is entitled to disability benefits.")

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|----------|-------------------------|------|--------------------|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

pain does not rise to the level of disabling pain"); Kibel v. Aetna Life Ins. Co., 725 F. App'x 475, 477 (9th Cir. 2018) (cited at Perez Opp. at 7) (holding that district court "erred in failing to consider the personal statement [claimant] submitted" attesting to her disabilities at all); Holmgren v. Sun Life & Health Ins. Co., 354 F. Supp. 3d 1018, 1029 (N.D. Cal. 2018) (cited at Perez Opp. at 7) (concluding that "a disability determination may be based on a patient's self-reported symptoms *if said reporting is credible*") (emphasis added). None of these cases have any application here, where the Court has considered Perez's reports and simply found them unpersuasive considering her credibility and the weight of all the evidence.

For all of these reasons, the Court finds and concludes that Perez's additional non-medical evidence fails to establish that Perez is totally disabled, as that term is applied by the Plans in question.

## V.    DISPOSITION

To the extent necessary, each of the foregoing findings of fact may be deemed a conclusion of law, and each of the foregoing conclusions of law may be deemed a finding of fact.

Despite Perez's assertion that LNL wrongfully denied her disability benefits in violation of ERISA and the terms of the relevant Plans, there is little evidence in the record before the Court to support this assertion. The evidence from Perez's own treating physicians, taken together, does not support a finding that Perez is totally disabled and unable to discharge the ordinary functions of her occupation, or any other occupation. The evidence from the independent medical examiners and medical reviewers, including an independent medical examiner that Perez herself retained, also does not support a finding of disability. Nor can the Court rely on Perez's other non-medical evidence—namely, personal narratives submitted by Perez and two of her children—to make a total disability finding.

Accordingly, while there can be little doubt that Perez has suffered from a serious medical condition that impairs her to some degree, there is not enough evidence before the Court to find and conclude that Perez is totally disabled pursuant to ERISA and the terms of the relevant Plans. See Matthews, 10 F.3d at 680 ("The mere existence of an impairment is insufficient proof of disability."); Jordan, 370 F.3d at 880 ("That a person has a true medical diagnosis does not by itself establish disability."). Because Perez has not carried

**CIVIL MINUTES – GENERAL**      **"O"**      **JS-6**

| Case No. | 2:18-CV-07422-CAS (JCx) | Date | September 25, 2019 |
|---|---|---|---|
| Title | PEREZ V. LINCOLN NATIONAL LIFE INSURANCE CO. | | |

her burden to establish, by a preponderance of the evidence, that she is totally disabled from performing the ordinary functions of her occupation, her claim must be **DENIED**.

IT IS SO ORDERED.

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | KDI | | |